UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA

    -v.-

KAMRAN FARIDI,

          Defendant.
-----------------------------------------------------x

SEALED ORDER

No. 20-CR-441 (CS)

Seibel, J.

    No later than February 1, 2021, counsel for the Government and for Mr. Faridi shall advise the Court by letter as to their positions on the attached application.

SO ORDERED.

Dated: January 18, 2022
       White Plains, New York

                                                 _____
                                                 CATHY SEIBEL, U.S.D.J.



**OFFICE OF THE FEDERAL DEFENDER**
**Eastern District of California**
801 I Street, 3rd Floor
Sacramento, California 95814-2510
Toll Free: 855-328-8339
TEL: 916-498-5700    FAX: 916-498-5710

HEATHER E. WILLIAMS
Federal Defender

JEROME PRICE
Chief Assistant Defender

RACHELLE BARBOUR
Assistant Federal Defender

January 10, 2022

The Honorable District Judge Cathy Seibel
United States District Court
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re: Request for Public Access to Judicial Documents in Prosecution of Defendant Kamran Faridi (20-MJ-02437 and 7:20-CR-441)

Honorable District Judge Seibel:

    I am writing to request that the Court unseal the magistrate and district court cases in which Kamran Faridi was prosecuted. I respectfully request that the the dockets and judicial documents in those cases be made available to the public as discussed below.

    I have been able to determine that the magistrate court case number for Mr. Faridi's complaint and initial appearances is 20-MJ-02437. That full case is under seal in PACER. (Attach. A.) I have also determined that the district court case number is 7:20-CR-441 and that Your Honor presided over that case, which is also under seal in PACER. (Attach. B.) There is public information from the BOP verifying that Mr. Faridi is currently serving a term of custody in the Bureau of Prisons. (Attach. C.) Yet, a Pacer search for Mr. Faridi's name discloses no criminal cases against him. (Attach. D.) Mr. Faridi's case has been discussed in the international media, which confirms that he was charged, pled, and was sentenced in your Court in 2020. (Attach. E.)

    I am requesting unsealing as a member of the public and an Assistant Federal Defender, interested in court accessibility, the administration of criminal justice, and the right of the public to monitor the actions of the Government and the Court. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *see also Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989); *see generally Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1 (1986).

    I am not requesting access to personal information, such as Mr. Faridi's home address, social security number, birthdate, medical details, or any financial affidavit or other administrative documents. *See, e.g., Terpin v. Pinsky*, No. 20-CV-3557 (SDNY June 1,

1

2020)(Seibel, J)(redacting Defendant's home address and sealing administrative documents). I am not requesting access to his Presentence Report.

Given that both the dockets are completely sealed, and that any rationale for sealing these cases and documents is itself sealed, I ask that the Court accept this letter as a request for the unsealing of these dockets and documents. *See, e.g. United States v. Madoff*, 626 F.Supp.2d 420 (SDNY June 17, 2009)(accepting letter to the Court as a request for unsealing). I am providing a copy of this letter to the Federal Defender and United States Attorney's Offices, to Mr. Faridi in BOP, and to the person I believe is his retained attorney.

The Supreme Court, the Second Circuit, and this Court have long recognized a public right of access to court records both under the First Amendment and the common law. *See e.g., Globe Newspaper*, 457 U.S. at 604–05 ("to the extent that the First Amendment embraces a right of access to criminal trials, it is to ensure that this constitutionally protected discussion of governmental affairs is an informed one"); *Press-Enterprise*, 478 U.S. at 13 (recognizing the right of access to preliminary hearings in criminal cases); *Ayala v. Speckard*, 89 F.3d 91 (2d Cir.), *modified on denial of rehearing*, 102 F.3d 649 (2d Cir. 1996) (ruling that a defendant's constitutional right to a public trial was violated where a trial judge closed the courtroom and failed to articulate alternatives to closure that would adequately protect the state interest justifying the closure); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 CIV. 4483 RCC/MHD, 2006 WL 3016311, at *1 (S.D.N.Y. Oct. 23, 2006). Such a right is "firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

The presumption of access is "based on the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). The First Amendment right of access may only be overcome by a demonstration of "substantial probability of harm to a compelling interest." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460 (S.D.N.Y. 2017). This requires specific, on the record findings demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2nd Cir. 1987. Broad or general findings are insufficient, "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984).

All "sealing must be supported by specific findings." *Hardy v. Kaszycki & Sons*, No. 83-CV-6346 (LAP), 2017 WL 6805707, at *6 (S.D.N.Y. Nov. 21, 2017) (citing *United States v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995)). The fact that the parties to the litigation may have agreed to sealing or a protective order does not by itself establish good cause. *Fournier v. Erickson*, 242 F. Supp. 2d 318, 342 (S.D.N.Y. 2003)(vacating stipulated protective order because it allowed the parties to "circumvent the 'good cause' standard for protection").

I ask for public access to the following Court records from Mr. Faridi's prosecution:

1. Dockets: The Court should unseal the dockets in the magistrate and district court cases. A wholly secret criminal proceeding resulting in a defendant spending years in prison is unconstitutional. The public and press have a First Amendment right of access to court

2

docket sheets. *See Hartford Courant Co. v. Pelegrino*, 380 F.3d 83 (2d Cir. 2004). Indeed, in *Hartford Courant*, the court noted that "the ability of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible." It further reasoned that sealed docket sheets would frustrate the ability of public and press to inspect court records, which are presumptively open, and the inaccessibility of docket sheets could thwart appellate review of underlying decisions about sealing. *Id.* at 94; *see also Livecchi v. Rochester Police Dep't*, No. 04-CV-6162 CJS, 2004 WL 1737379, at *1 (W.D.N.Y. Aug. 2, 2004) (citing *Hartford Courant*, and ordering docket sheets unsealed where the plaintiff had "not presented any information from which the Court could conclude that sealing of the case is essential to preserve higher values.")

2. Complaint and Indictment: The complaint and indictment must be unsealed. In the civil context the Second Circuit reasoned, "A complaint . . . is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2nd Cir. 2016). "[A] sealed complaint leaves the public unaware that a claim has been leveled and that state power has been invoked. . . ." *See Bernstein*, 814 F.3d at 140. This is no less true in a criminal prosecution.

3. Pretrial Motions and Proceedings: "Documents filed in relation to a motion" are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 126; *United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001)(unsealing detention hearing, including tapes played by Government at that hearing); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017); *In re N.Y. Times Co.* 828 F.2d 110, 114 (2nd Cir. 1987); *League of Women Voters v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) ("every part of every brief filed to influence a judicial decision qualifies as a "judicial record"). Preliminary matters must be open to the public. *Press-Enterprise II*, 478 U.S. at 13-14 (transcript of preliminary hearing must be available to public); *United States v. Klepfer*, 734 F.2d 93 (2d Cir. 1984)(motion to suppress hearing open to the public); *see also Application of Herald Co.*, 734 F.2d 93, 99 (2d Cir. 1984) ("We therefore agree with the Third and Ninth Circuits that the First Amendment extends some degree of public access to a pretrial suppression hearing.").

The presumption of public access applies to whatever sealing motion was filed and the Court's decision on that motion. Had that motion been made publicly, the public and the press could have been heard at the time in opposition. *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 4 (D.D.C. 2009) (noting that the Court had granted press motion to intervene "for the limited purpose of opposing the government's motion" to designate unclassified material as "protected" under the Protective Order governing Guantanamo Bay prosecutions.) The right to intervene in favor of public access to court documents includes the right to "challenge confidentiality orders." *See League of Women Voters of the United States v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020) ("Every circuit court that has considered the question . . . has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.")

The sealing order should be publicly available to ensure that it was based on "specific, on the record findings demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re N.Y. Times Co.*, 828 F.2d at 116. This ensures that the judges "carefully and skeptically review[d] sealing requests to ensure that there really is an extraordinary circumstance or compelling need." *Video Software Dealers Assoc. v. Orion Pictures, Corp.*, 21 F.3d 24, 27 (2d Cir.1994). It is impossible for the public or press to challenge the "scope or need for confidentiality" when that analysis is itself sealed. *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)

4. Plea Agreement: The public has a constitutional right of access to documents filed in connection with plea hearings and plea agreements. *United States v. Haller*, 837 F.2d 84, 87 (2nd Cir. 1988).

5. Sentencing Documents: Sentencing documents, such as objections and sentencing arguments, must be made available. *See United States v. Doe*, 356 Fed. App'x 488 (2d Cir. 2009). In *Doe*, the trial court refused to seal defendant's sentencing hearing transcript. The Second Circuit affirmed, holding that the lower court correctly established that the public's right of access imposes a high burden on the party moving to seal and requires four steps: (1) specific, on-the-record findings of "substantial probability of prejudice to a compelling interest"" that closure would prevent; (2) consideration of alternatives to closure; (3) balancing the risk of prejudice against First Amendment right of access; (4) ensuring closure is narrowly tailored to protect against prejudice. *See also United States v. Alcantara*, 396 F.3d 189, 196 (2d Cir. 2005) ("There is little doubt that the First Amendment right of access extends to sentencing proceedings.").

6. Judgment and Commitment Order: "An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017). "[A] court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F.Supp.2d 606, 612 (S.D.N.Y. 1998) (citing Joy, 692 F.2d at 893 ).

This request is timely. *See, e.g., In re Pineapple Antitrust Litig.*, No. 04 MD. 1628 RMB MHD, 2015 WL 5439090, 2015 U.S. Dist. LEXZIS 122438, at *2 (S.D.N.Y. Aug. 10, 2015) ("There is no legal authority of which we are aware ... to the effect that there is a deadline by which . . . request for access to documents must be asserted, and certainly no requirement that the application be made before the lawsuit is closed.")

I have checked the Court's Local Rules, Orders, and ECF Rules to attempt to determine the method by which these cases were sealed. The Court's ECF Rule, No. 6-20, states that electronic filing under seal is not permitted in criminal cases, and therefore, those ECF rules explicitly do not apply to the records I seek. Section 6 of those rules pertains to "Filing Under Seal and Redacting in Civil and Miscellaneous Cases." It is not clear if any of the documents at issue would qualify as "Highly Sensitive Documents" under the Court's Standing Order 21-MC-0006 (which by its terms only applies to civil or miscellaneous cases), as none of the

4

documentation has been made available. It appears that the Court allows for certain cases to be filed completely under seal, but the Court's rules do not indicate what kind of cases those may be or what procedures must be followed. ECF Rule 14.2, referring to "cases sought to be filed under seal," does not seem to apply to this criminal case as it requires a "civil cover sheet," and refers to ECF Rule 6.14, which does not apply to criminal cases. Accordingly, I write to you in an attempt to obtain public access.

I hope that the Court will consider my request and enable access to the proceedings against Mr. Faridi. Should the Court require additional information from me, I can be reached at Rachelle_Barbour@fd.org.

Sincerely,

Rachelle Barbour
Assistant Federal Defender


cc: David Patton, Federal Defender
    Damian Williams, United States Attorney
    Jeffrey Chabrowe, esq.
    Kamran Faridi

5

Query    Reports    Utilities    Help    Log Out

# Query

**WARNING: Search results from this screen are NOT subject to the 30 page limit on PACER charges. Please be as specific as possible with your search criteria.**

**Search Clues**                                                                                                   Mobile Query

Case Number       [20-mj-02437]   This case is under seal.

**or search by**

Case Status:      ○ Open    ○ Closed    ○ All

Filed Date                   to

Last Entry Date              to

Nature of Suit
```
0 (zero)
110 (Insurance)
120 (Contract: Marine)
```

Cause of Action
```
M:22-1 (M 22-1 Designation by U.S. Attorney of individual to accept service of summons and complaint)
0 (No cause code entered)
02:0138 (02:138 Library of Congress Access)
```

Last/Business Name                    ☐ Exact matches only

First Name                     Middle Name

Type                    ⌄

[Run Query]  [Clear]

**PACER fee: Exempt**

ATTACH A

Query    Reports    Utilities    Help    Log Out

# Query

**WARNING: Search results from this screen are NOT subject to the 30 page limit on PACER charges. Please be as specific as possible with your search criteria.**

**Search Clues**                                                                                         Mobile Query

Case Number          [20-cr-441]          This case is under seal.

or search by

Case Status:         ○ Open    ○ Closed    ○ All

Filed Date                        to

Last Entry Date                   to

Nature of Suit
```
0 (zero)
110 (Insurance)
120 (Contract: Marine)
```

Cause of Action
```
M:22-1 (M 22-1 Designation by U.S. Attorney of individual to accept service of summons and complaint)
0 (No cause code entered)
02:0138 (02:138 Library of Congress Access)
```

Last/Business Name                    ☐ Exact matches only

First Name                       Middle Name

Type                     ⌄

Run Query    [ Clear ]

**PACER fee: Exempt**

ATTACH. B

A-Z Topics    Site Map    FOIA

Search bop.gov

| Home | About Us | Inmates | Locations | Careers | Business | Resources | Contact Us |

# Find an inmate.

Locate the whereabouts of a federal inmate incarcerated from 1982 to the present. Due to the First Step Act, sentences are being reviewed and recalculated to address pending Good Conduct Time changes. As a result, an inmate's release date may not be up-to-date. Website visitors should continue to check back periodically to see if any changes have occurred.

**Find By Number** | **Find By Name**

First | Middle | Last | Race | Age | Sex
kamran | | faridi | | |

**1** Result for search **kamran faridi**       Clear Form       Search



**KAMRAN FARIDI**

Register Number: 87868-054

Age:   57
Race:  Asian
Sex:   Male

Located at: Coleman Low FCI

Release Date: 02/16/2026

**Related Links**

Facility Information
Call or email
Send mail/package
Send money
Visit
Voice a concern

About the inmate locator & record availability

| About Us | Inmates | Locations | Careers | Business | Resources | Resources For ... |
| About Our Agency | Find an Inmate | List of our Facilities | Life at the BOP | Acquisitions | Policy & Forms | Victims & Witnesses |
| About Our Facilities | First Step Act | Map of our Locations | Explore Opportunities | Solicitations & Awards | News Stories | Employees |
| Historical Information | Communications | Search for a Facility | Current Openings | Reentry Contracting | Press Releases | Federal Executions |
| Statistics | Custody & Care | | Application Process | | Publications | Former Inmates |
| | Visiting | | Our Hiring Process | | Research & Reports | Media Reps |
| | Voice a Concern | | | | | |

Contact Us | FOIA | No FEAR Act | Privacy Policy | Information Quality | Website Feedback
USA.gov | Justice.gov | Open Government

ATTACH. C

| | |
|---|---|
| **PACER Service Center** | 12/02/2021 11:29:06 |
| **User** | rbarbour |
| **Client Code** | |
| **Description** | All Court Types Party Search |
| | All Courts; Name faridi, kamran; Role def; All Courts |
| **Results** | The search returned no results. |
| **Billable Pages** | 1 ($0.10) |

ATTACH. D

 
Home (https://www.geo.tv/) > World (https://www.geo.tv/category/world)

# Ex-FBI CI Kamran Faridi jailed for seven years for threatening to kill colleagues

By Murtaza Ali Shah (https://www.geo.tv/writer/murtaza-ali-shah)

🕒 Friday Sep 24, 2021


(https://www.facebook.com/sharer.php?u=https%3A%2F%2Fwww.geo.tv%2Flatest%2F372326-ex-fbi-ci-kamran-faridi-)jailed-for-seven-



?326-ex-fbi-ci-kamran-

/w.geo.tv/latest/372326-

*US Federal Bureau of Investigation's (FBI) former confidential informant Kamran Faridi. — Photo provided by author*

LONDON: The US Federal Bureau of Investigation's (FBI) former confidential informant Kamran Faridi, 56, who facilitated the arrest of Karachi businessman Jabir Motiwala in London in August 2018, has been jailed and convicted in a dramatic turn of events for threatening to kill his former colleagues at the FBI, according to court papers filed in New York's Southern District and seen by this correspondent.

Faridi has been jailed on charges of transmitting threats to three former FBI colleagues — his FBI supervisor, a FBI Joint Terrorism Task Force (JTTF) officer, and his former FBI handler, who had recently retired — in New York's Westchester County where the JTTF headquarters is located.

His conviction is not related to Jabir Motiwala's extradition case but what happened to both Faridi and Motiwala is a gripping tale.

Faridi was born in Karachi but migrated to the US in the early 1990s where he secured a green card after agreeing to work for the FBI in some of the organisation's most dangerous operations. Faridi lived in Florida with his American wife Kelley for more than a decade and operated as a confidential informant for more than 20 years. He was a central character of the FBI's entrapment operation that ran for nine years and made worldwide headlines as it featured the names of Dawood Ibrahim and Jabir Motiwala.

The downfall of Faridi — who worked for the FBI from 1995 until February 2020, and carried out several top secret missions in Pakistan — began on March 2, 2020, when he was arrested at London Heathrow Airport while trying to enter from Miami with his wife Kelley.

They had flown to London to celebrate their 21st wedding anniversary but Kamran was also intent to testify in the UK High Court against the FBI for allegedly ordering him to lie about Jabir Motiwala's involvement in the import of Class-A drugs, extortion, money-laundering and connections to the D-company (name given by Indian media to organised crime syndicate founded and controlled by Dawood Ibrahim).

ATTACH. E

Faridi's relationship with the FBI started becoming sour when he was allegedly asked to lie about his targets' activities in affidavits, pick innocent people out of FBI suspect line-ups, and commit other "felony offenses" simply to obtain convictions. He refused to continue.

Motiwala, who now lives in Karachi, was arrested at the Hilton London Metropole in Paddington on August 16, 2018, by the Metropolitan Police's extradition unit on an American request in an alleged plot Faridi claims was initiated by the JTTF and facilitated by him.

The American case against Motiwala collapsed in April this year after Faridi alleged that he was forced by the FBI to entrap the Karachi businessman and that he helped the FBI create fake evidence.

After the US withdrew its case before the London High Court, Motiwala flew home as a free man. He now intends to sue the British authorities for incarcerating him at Wandsworth Prison, London, for 32 months on the basis of "trumped up" charges and sending his primary witness, Faridi, back to the US to allegedly prevent him from giving evidence of the FBI's "illegal" deeds.

Meanwhile, Kelley Faridi has been diagnosed with cancer but has to continue working to raise money for Kamran Faridi's appeal, as she is the family's only breadwinner.

**MORE FROM WORLD:**



(https://www.geo.tv/latest/381594-bangladeshi-swedish-feminist-taslima-nasreen-shocked-over-malalas-marriage)
Bangladeshi feminist Taslima Nasreen 'shocked' over Malala's marriage with Pakistani man

(https://www.geo.tv/latest/381594-bangladeshi-swedish-feminist-taslima-nasreen-shocked-over-malalas-marriage)

ATTACH. E

**OFFICE OF THE FEDERAL DEFENDER**
EASTERN DISTRICT OF CALIFORNIA
801 I STREET, 3RD FLOOR
SACRAMENTO, CALIFORNIA 95814

OFFICIAL BUSINESS

1060134150 CC04

The Honorable District Judge Cathy Seibel
U.S District Court, Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quaropas Street
White Plains, NY 10601-4150



US POSTAGE
FIRST-CLASS
$0.93
S93036.93